UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 4:25-cv-003 |
| | ) | |
| SAVANNAH LAND HOLDINGS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**CONSENT DECREE**

WHEREAS, Plaintiff United States of America (**"United States"**), by authority of the

Attorney General of the United States, acting at the request of and on behalf of the United States

Army Corps of Engineers (**"USACE"**), filed the Complaint in this action alleging that Defendant

Savannah Land Holdings, LLC (**"Savannah Land"**) violated and remains in violation of section

404 of the Clean Water Act (**"CWA"**), 33 U.S.C. § 1344; and

WHEREAS, the Complaint alleges that Savannah Land violated the terms and conditions

of the 2007 permit (SAS-2006-00691) granted under CWA section 404 (the **"Permit"**) to allow

filling of 27.2 acres of jurisdictional wetlands on a 2,230-acre development area in Richmond Hill,

Bryan County, Georgia, which is referred to in the Complaint and hereinafter as the **"Property"**,

and specifically that Savannah Land did not comply with the terms of a Programmatic Agreement

(**"PA"**) incorporated into the Permit to govern treatment of historic properties present on the

Property consistent with the National Historic Preservation Act (**"NHPA"**); and

WHEREAS, the Complaint alleges that Savannah Land did not comply with the PA's

protections for historic properties eligible or potentially eligible for inclusion in the National

Register of Historic Places (**"NRHP"**), and specifically: (1) failed to produce the required reports

1

governing mitigation at Eligible Sites (as defined below), (2) developed land within Eligible Sites (as defined below) without proper safeguards, resulting in irreparable damage caused by construction, excavation, and grading, (3) failed to properly document and curate the artifacts (including human remains and funerary objects) that it recovered, resulting in destruction and misplacement of lost artifacts, (4) failed to follow the PA's procedures for handling and repatriating human remains, and (5) failed to notify the appropriate authorities following inadvertent discovery of human remains (Compl. ¶¶ 28, 33); and

WHEREAS, the Complaint seeks:  (1) an appropriate civil penalty for violation of the CWA; (2) an injunction prohibiting Savannah Land (and third parties engaged in development at the Property) from further development in violation of the Permit, and requiring Savannah Land to undertake compensatory measures to restore the Property and protect its remaining cultural resources, to instate a security plan to prevent destruction and looting of remaining cultural resources, to properly curate all artifacts in its possession at a suitable institution, and to comply with CWA and NHPA requirements in the future; and (3) costs including attorney's fees and any other relief as the Court may deem proper; and

WHEREAS, Savannah Land denies the allegations in the Complaint and has taken action to address the concerns regarding compliance with the Permit and the PA, and in that regard, has engaged in ongoing discussions with USACE to (i) enter into a memorandum of agreement (**"MOA"**), which will entirely replace the existing PA, and (ii) issue a modified Permit to, among other things, incorporate the new MOA and extend the Permit term; and

WHEREAS, after the United States filed the Complaint, the United States and Savannah Land (singly a **"Party"** and collectively the **"Parties"**) commenced settlement negotiations; and

WHEREAS, USACE, Savannah Land, the Georgia Department of Community Affairs,

State Historic Preservation Office (the **"GA SHPO"**), and The Muscogee (Creek) Nation (**"MCN"**) have agreed on the terms and conditions of an MOA which will supersede the PA and set forth the obligations of Savannah Land concerning the treatment of Historic Properties located on the Property as required by the Permit and as will be required by a modified Permit and resulting from the NHPA Section 106 Process, 54 U.S.C. § 306108; and

WHEREAS, USACE has agreed to modify the Permit per 33 C.F.R. § 325.7, which will incorporate the MOA pursuant to 36 C.F.R. § 800.6(c), and extend the Permit by a period of five (5) years (until December 31, 2032) (the **"Modified Permit"**), contemporaneously with  Savannah Land resolving Permit noncompliance by executing this Consent Decree and the MOA; and

WHEREAS, the MOA shall be signed and delivered and the Modified Permit proffered and accepted (hereinafter **"issued"** or **"issuance"**) contemporaneously with the execution by the Parties of this Consent Decree; and

WHEREAS, the mandatory injunctive relief plans referenced in Paragraphs 14 and 15 of this Consent Decree, in particular, are the result of the Parties' efforts to meet injunctive relief objectives in consideration of Savannah Land's ability to pay and other mitigating factors; and

WHEREAS, the Parties agree, and the Court by entering this Consent Decree finds, that the Parties negotiated this Consent Decree in good faith, and it is fair, reasonable, and in the public interest;

THEREFORE, before the taking of any testimony upon the pleadings, without the adjudication or admission of any issue of fact or law except as provided in Section I of this Consent Decree, and with the consent of the Parties, it is decreed as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action pursuant to CWA

section 404(s), 33 U.S.C. § 1344(s), and 28 U.S.C. §§ 1331, 1345, and 1355.

2. Venue is proper in this Court pursuant to CWA section 404(s), 33 U.S.C. § 1344(s), and 28 U.S.C. § 1391(b) and (c), because Savannah Land owns property or conducts business in this District. In addition, the subject Property referenced in this Complaint is located in Richmond Hill, Georgia, and the cause of action alleged herein arose in this District.

3. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Savannah Land consents to the Court's jurisdiction over this Consent Decree and any such action and over Savannah Land and consents to venue in the Southern District of Georgia.

4. For purposes of this Consent Decree or any action to enforce this Consent Decree, Savannah Land agrees that the Complaint states claims upon which relief may be granted pursuant to CWA section 404(s), 33 U.S.C. § 1344(s), provided this agreement is without prejudice to any other defenses or positions available to Savannah Land.

## II. APPLICABILITY

5. The obligations of this Consent Decree apply to and are binding upon Savannah Land and any successors, assigns, or other persons otherwise bound by law whether or not any such person has notice of this Consent Decree.

6. Savannah Land shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree, including, for example, any contractor or consultant retained to perform injunctive relief required under this Consent Decree. Savannah Land shall condition such contracts upon performance that conforms to the terms of this Consent Decree. The United States shall not be considered a party to any such contract.

4

7.      In any action to enforce this Consent Decree against Savannah Land, Savannah Land shall not raise as a defense the failure by any of its officers, directors, employees, agents, successors, assigns, contractors, consultants, or any person acting in concert or participation with Savannah Land, to take actions necessary to comply with the provisions of this Consent Decree, but this provision shall not prevent Savannah Land from denying the existence of any alleged violation or from asserting any other available defense or position.

8.      It is the express purpose of the Parties in agreeing to this Consent Decree to further the objectives set forth in CWA section 101(a), 33 U.S.C. § 1251(a), NHPA section 106, 54 U.S.C. § 306108, and 33 C.F.R. § 330.4(g).

## III.    DEFINITIONS

9.      Terms used in this Consent Decree have the same meaning assigned to them by applicable provisions of the CWA, the NHPA, or their implementing regulations, unless otherwise provided in this Consent Decree.

10.      The following terms used in this Consent Decree have the definitions set forth in this Paragraph:

**"Complaint"** means the pleading that the United States filed to commence this case.

**"Consent Decree"** means this Consent Decree and all modifications made effective in accordance with Section XVII ("Modification").

**"Commercial Developer"** means a corporate entity which has acquired or in the future acquires land within the Property for development purposes and undertakes work authorized under the Permit or Modified Permit pursuant to a transfer of permitting authority.

**"CWA"** means the Clean Water Act, 33 U.S.C. §§ 1251–1388.

"**Data Recovery Excavation**" means the process of data recovery through mitigation excavation and digging to gather data and artifacts.

"**Day**" (plural "**days**") means a calendar day unless expressly stated to be a business day. In computing any period of time for a deadline under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period runs until the close of business of the next business day.

"**Defendant**" means Savannah Land Holdings, LLC.

"**Deliverable**" means any document that this Consent Decree requires to be submitted to DOJ with a copy to USACE for review and approval as set forth in Section VI ("Deliverables").

"**DOJ**" means the United States Department of Justice.

"**Effective Date**" means the date provided in Section XV ("Effective Date").

"**Eligible Sites**" (singly "**Eligible Site**") means the following nine areas that were determined by USACE in consultation with the GA SHPO and the Seminole Tribe of Florida to encompass Historic Properties eligible for inclusion on the NRHP: 9BN9, 9BN104, 9BN847, 9BN872, 9BN873, 9BN875, 9BN887, 9BN906, and 9BN909. As described in the MOA, the Eligible Sites include: Historic Properties eligible for inclusion on the NRHP which are to be either (i) preserved in place pursuant to a Preservation-in-Place Management Plan or (ii) mitigated under a Phase III Archaeological Data Recovery Program.

"**Historic Property**" means a prehistoric or historic district, site, building, structure, or object included in, or eligible for inclusion in, the NRHP, including artifacts, records, and remains related to and located within such property . The term includes properties of traditional religious and cultural importance to an Indian tribe organization and that meet the National Register criteria. 36 C.F.R. § 800.16(l)(1). The term "eligible for inclusion in the National Register" includes both

properties formally determined as such in accordance with regulations of the Secretary of the Interior and all other properties that meet the National Register criteria. *Id.* § 800.16(l)(2).

"**Modified Permit**" means the Modified Permit being issued contemporaneously with the entry of this Consent Decree.

"**MOA**" means the Memorandum of Agreement between USACE, the GA SHPO, The MCN, and Savannah Land Holdings, LLC. The MOA is incorporated into the Modified Permit and wholly replaces the PA that was incorporated into the 2007 Permit.

"**NHPA**" means the National Historic Preservation Act, 54 U.S.C. § 300101 *et seq*.

"**NRHP**" means National Register of Historic Places.

"**Paragraph**" means a portion of this Consent Decree identified by an Arabic numeral.

"**Parties**" means the United States and Savannah Land and "**Party**" means either the United States or Savannah Land.

"**Permit**," unless otherwise specified, means Permit Number SAS-2006-00691, the CWA section 404 permit issued in 2007 by USACE to Fletcher Management Company, Inc. and later transferred to Savannah Land as permittee, to authorize development of the Property in accordance with its specified terms and conditions, including the PA.

"**Phase III Archaeological Data Recovery Program**" means the archaeological process of data recovery through Data Recovery Excavations, and the identification and analysis of such data and artifacts in a report, and the curation of such recovered data and artifacts. The archaeological work to be performed under the Phase III Archaeological Data Recovery Program is sometimes hereinafter referred to as "Archaeological Data Recovery Work" or a "Phase III Investigation". These data recovery efforts are being undertaken to mitigate the impacts to NRHP-eligible archeological sites by recovering significant data or information typically prior to

disturbance or destruction. The Phase III Archaeological Data Recovery Program culminates in the creation of a report detailing the history of the site, as defined and included in the MOA.

"**Preservation Area(s)**" means the entirety of an NRHP-eligible site or portion thereof as proposed by Permittee and approved by USACE in consultation with the GA SHPO and Tribes that will be preserved undisturbed in accordance with the Preservation-In-Place Management Plan.

"**Preservation-in-Place Management Plan**" means a management plan that provides appropriate use restrictions, maintenance procedures, and other conditions to preserve in place and provide security for Preservation Areas, as defined and included in the MOA.

"**Programmatic Agreement**" or "**PA**" means the 2007 agreement governing "Treatment of Historic Properties, Genesis Point Development Tract, Bryan County, Georgia, Fletcher Management Company, Department of the Army Permit Application No. 200415660/200600691" incorporated into the Permit.

"**Property**" means the 2,230-acre property outside of Richmond Hill, Bryan County, Georgia, on which Savannah Land and third parties are developing the Waterways Development.

"**Request for Termination**" means a written request presented by Savannah Land to the United States in accordance with Section XVIII ("Termination").

"**Section**" when not used in conjunction with the NHPA and CWA (e.g. CWA section 404) or the Internal Revenue Code, means a portion of this Consent Decree identified by a Roman numeral.

"**USACE**" means the United States Army Corps of Engineers, typically through its Savannah District.

"**Waterways Development**" means the mixed use residential and recreational development located on the Property which is subject to the Permit.

8

**"Waterways Township Owners Association"** means the homeowners association for the Waterways Development.

## IV.   CIVIL PENALTY

11.    Within 30 days after the Effective Date of this Consent Decree, and before the Termination of this Consent Decree, Savannah Land shall pay the sum of $1,100,000 as a civil penalty.  Savannah Land shall make the above-referenced payment by FedWire Electronic Funds Transfer to the DOJ account, in accordance with instructions provided to Savannah Land by the Financial Litigation Unit (**"FLU"**) of the United States Attorney's Office for the Southern District of Georgia after the Effective Date.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System (**"CDCS"**) number, which Savannah Land shall use to identify such payment.  The FLU will provide the payment instructions to: Michael Nelson, 2267 Harborview Drive, Richmond Hill, Georgia 31324, (912) 445-4975, mnelson@livewaterways.com on behalf of Savannah Land.  Savannah Land may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States in accordance with Section XIV ("Notices").

12.    At the time of payment, Savannah Land shall send notice that payment has been made to the United States via email in accordance with Section XIV ("Notices").  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Savannah Land Holdings, LLC* and shall reference the civil action number, CDCS Number, and DOJ case number (DJ# 90-5-1-1-22839).

13.    Savannah Land shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section VIII ("Stipulated Penalties") in calculating its federal income tax.

9

## V.    INJUNCTIVE RELIEF

14.    <u>Prohibitory injunctive relief</u>.  Except as otherwise provided in this Consent Decree, Savannah Land and its agents are enjoined from performing the work authorized by the Modified Permit on the Property if the Modified Permit is expired, suspended, or revoked.

15.    <u>Mandatory injunctive relief</u>:

(a)    <u>Permit transfer</u>:  This Consent Decree will be executed and filed with the Court contemporaneously with the execution and delivery of the MOA and USACE's issuance of the Modified Permit.  Within 14 days after the Effective Date, Savannah Land shall transfer the Permit to each Commercial Developer to whom it has transferred or sold any portion of land to be developed within the Property.

Savannah Land shall obtain the signature of each Commercial Developer transferee in connection with all future transfers or sales of land within the Property to Commercial Developers.  Savannah Land shall provide DOJ and also USACE with copies of any signed permit transfers. Savannah Land shall also request each Commercial Developer (past or future) to designate a point of contact responsible for communications regarding Modified Permit compliance.

Once a Commercial Developer has purchased Property from Savannah Land (the **"Purchased Property"**) and signed the USACE's transfer of permit form with respect to the Modified Permit, and a copy of the signed transfer form has been provided to the USACE, then Savannah Land shall have no further obligation, duty, responsibility, or liability whatsoever under this Consent Decree, the Modified Permit, or the MOA with respect to the Purchased Property. A Commercial Developer shall not be required to transfer the Permit to individual homeowners or

10

"spec builders" to whom it sells houses or lots which do not require work authorized under the Modified Permit.

The failure to transfer the Modified Permit to a Commercial Developer to whom it has already transferred or sold any portion of land to be developed within the Property shall not be a violation or breach of this Consent Decree if Savannah Land provides the transfer form to the Commercial Developer and requests that it be signed, but the Commercial Developer refuses to sign or attempts to put conditions on its execution. Savannah Land will remain the permittee until a valid transfer is executed.

(b)     Qualified Archaeologist:  Within 60 days after the Effective Date, Savannah Land shall hire and designate a professional archaeologist who meets the Secretary of the Interior Professional Qualification Standards (48 Fed. Reg. 44,716-738) (**"Qualified Archeologist"**) to monitor the preservation and data recovery work to be performed within the Eligible Sites and respond to potential inadvertent discovery of human remains on the Property.  USACE reserves the right to verify the credentials and qualifications of the Professional Archaeologist hired as the monitor.

(c)     Repatriation of remains and funerary objects:  Within 60 days after the Effective Date, Savannah Land shall initiate coordination with the Georgia Office of the State Archaeologist and Tribe(s) regarding the repatriation of the human remains and funerary objects that were previously removed from Eligible Sites 9BN909 and 9BN9.  Savannah Land shall complete repatriation for the Eligible Site from which such remains were removed no more than 60 days after the determination of the culturally affiliated tribe's preference concerning repatriation.

11

(d)    <u>Curation of all removed artifacts:</u>  Within 60 days after the Effective Date, Savannah Land shall submit a Preliminary Curation Report to DOJ with a copy to USACE detailing its progress in documenting artifacts removed from the Property and preparing them for curation (the **"Preliminary Curation Report"**).  The Preliminary Curation Report shall also document removed artifacts for which curation is not possible because of the artifacts' poor condition from prior handling or insufficient documentation.  Savannah Land shall identify a curation location in consultation with USACE and certify that it is compliant with all federal curation guidelines at 36 C.F.R. § 79.  Following submission of the Preliminary Curation Report, Savannah Land shall submit quarterly status reports to DOJ, with copies to USACE, every 90 days, until all archaeological artifacts removed from the Property which are in the possession, custody, or control of Savannah Land have been curated in accordance with the MOA (the "**Quarterly Curation Reports**").  The Preliminary Curation Report and the Quarterly Curation Reports will be considered Deliverables pursuant to Section VI of this Consent Decree.  Savannah Land may not transfer the responsibility to curate artifacts already in its ownership, possession, or control.

(e)    <u>Deed restrictions:</u> For each Preservation Area within the Eligible Sites, Savannah Land shall record in the public records of Bryan County either a deed restriction or a conservation easement pursuant to the MOA and O.C.G.A. §§ 44-10-1 to 44-10-8 (the **"Deed Restriction(s) or Conservation Easement(s)"**).  Savannah Land shall transmit copies of each recorded Deed Restriction or Conservation Easement to DOJ with a copy to USACE as Deliverables pursuant to Section VI of this Consent Decree.

The Parties agree that the Georgia Trust for Historic Preservation (the "Trust") will be the holder of the Conservation Easement(s).  If for any reason the Trust is unwilling or unable

12

to accept the Conservation Easement(s), Savannah Land shall propose a new holder as defined in O.C.G.A. § 44-10-2, subject to USACE approval.

## VI. DELIVERABLES

16.     After Savannah Land submits any Deliverable required by this Consent Decree to DOJ with a copy to USACE, USACE shall, in writing to Savannah Land: (a) approve the submission as written; (b) approve the submission with specified conditions; or (c) disapprove the submission.  The following are the Deliverables:

  (a)     the Preliminary Curation Report;

  (b)     the Quarterly Curation Reports;

  (c)     copies of the Deed Restrictions or Conservation Easements;

  (d)     the Semi-Annual Reports; and

  (e)     the final Semi-Annual Report.

17.     If USACE approves the Deliverable submission as written, Savannah Land shall act in accordance with the schedules and requirements of the Deliverable, as approved.  If USACE approves the Deliverable submission upon specified conditions, Savannah Land shall, upon written direction from USACE to Savannah Land, take all actions required by the approved portions of the Deliverable submission that USACE determines are technically severable from any disapproved portions.

18.     If USACE disapproves the Deliverable submission in whole, Savannah Land shall, within 30 days after its receipt of such disapproval  (or such other time as USACE and Savannah Land agree to in writing), correct all deficiencies and resubmit the Deliverable with a copy to DOJ for approval in accordance with the preceding Paragraphs in this Section.  If and to the extent

13

USACE approves the Deliverable resubmission in whole, Savannah Land shall proceed in accordance with the immediately preceding Paragraph in this Section.

19.     If USACE disapproves in whole the Deliverable resubmission, USACE may again require Savannah Land to correct any deficiencies, in accordance with the preceding Paragraphs in this Section, or USACE may itself correct any deficiencies, until such Deliverable is approved by USACE.  All approvals, disapprovals and corrections provided in accordance with Paragraphs 17, 18, and 19 hereinabove shall be provided to Savannah Land within thirty (30) days of receipt of the Deliverable in accordance with the notice provisions contained in Paragraph 64 below.

20.     If Savannah Land elects to invoke Dispute Resolution as set forth in Section X ("Dispute Resolution") concerning a decision by USACE to disapprove, approve on specified conditions, or modify a Deliverable, Savannah Land shall do so by sending a notice of dispute in accordance with Section X ("Dispute Resolution") within 30 days after USACE serves the applicable decision (or such other time as USACE and Savannah Land agree to in writing).

21.     Any stipulated penalties applicable to the original Deliverable submission, as provided in Section VIII ("Stipulated Penalties"), shall accrue during the 30-day (or other agreed-upon) period that Savannah Land has to correct all deficiencies and resubmit the Deliverable for approval or invoke Dispute Resolution, but shall not be payable unless the resubmission is untimely, or USACE disapproves it in whole or in part.

**VII.    REPORTING**

22.     Savannah Land shall submit semi-annual reports to DOJ and USACE at the addresses set forth in Section XIV ("Notices") by July 31st and January 31st of each year after the Effective Date, until Termination of this Consent Decree pursuant to Section XVIII ("Termination") (the **"Semi-Annual Reports"**).  Each Semi-Annual Report shall include:

(a)  A list of permit transfers that were executed and provided to USACE and validated by USACE since (i) the Effective Date, for the first Semi-Annual Report, or (ii) the previous Semi-Annual Report, for subsequent reports.

(b) A list of all submitted Current Condition Reports, Completion of Fieldwork Reports, Technical Reports, Monthly Status Reports, Archaeological Data Recovery Reports, and Preservation-in-Place Management Plans submitted to USACE pursuant to the MOA denoting which reports have been approved by the USACE since (i) the Effective Date, for the first Semi-Annual Report, or (ii) the previous Semi-Annual Report, for subsequent reports.

(c) A list of all Deliverables that are pending before the USACE since (i) the Effective Date, for the first Semi-Annual Report, or (ii) the previous Semi-Annual Report, for subsequent reports.

(d) A summary of all Stipulation requirements in the MOA that have yet to be completed including their status (*e.g.* whether they have been started).

23.    Savannah Land shall submit a final Semi-Annual Report containing the information set forth in Paragraph 22 to DOJ and USACE at the addresses set forth in Section XIV ("Notices") within 30 Days after:

(a)(i)    all nine Eligible Sites have been treated under an approved Preservation-In-Place Management Plan or Phase III Archaeological Data Recovery Program, as required under the MOA;

(ii)    all Curation obligations under this Consent Decree have been completed;

(ii) all Preservation Areas have been transferred to the Waterways Township Owners Association or its successor; and

(iv) all Deed Restrictions or Conservation Easement(s) have been delivered to DOJ with a copy to USACE; or

(b)(i) Savannah Land has sold the entirety of the Property subject to the Modified Permit, and has transferred the Modified Permit, to a Commercial Developer(s) as provided in Section 15(a); and

(ii) Savannah Land has either completed (e.g. curation of artifacts in its possession or control) or transferred to a Commercial Developer(s) all obligations remaining under the Modified Permit.

24.     Each Semi-Annual Report submitted by Savannah Land under this Section shall be signed by a senior management official of Savannah Land and the Qualified Archaeologist (see Paragraph 15(b) above) and include the following certification:

> I certify under penalty of perjury that this document was prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

25.     The duties and obligations of the parties to the MOA will be governed by the terms and conditions of the MOA and Modified Permit and not this Consent Decree. The reporting requirements of this Consent Decree do not relieve Savannah Land of any reporting obligations otherwise required under the MOA or by federal, state, or local law, regulation, permit, or other requirement.

16

26.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

27.     Savannah Land shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless:  (i) the violation is excused under Section IX ("Force Majeure"); (ii) the obligation violated has been modified under Section XVII ("Modification"); or (iii) the United States exercises its discretion as set forth in Paragraph 32 of this Consent Decree.  The express written obligations of Savannah Land under this Consent Decree are: (x) paying the civil penalty as required in Section IV ("Civil Penalty"), (y) performing the injunctive relief as required in Section V ("Injunctive Relief"), and (z) providing the Deliverables identified in Paragraph 16 in Section (VI ("Deliverables").  A failure by Savannah Land to perform an express written obligation as required by the written terms of this Consent Decree (including failing to provide any Deliverable required under this Consent Decree) and within the specified time schedules expressly established by or approved under this Consent Decree, shall constitute a violation of this Consent Decree.  A failure of Savannah Land to perform an obligation of the MOA shall not constitute a violation of this Consent Decree and shall be addressed as provided in the MOA and Modified Permit.

28.     The following stipulated penalties shall accrue per violation per day for each violation of any obligation of Section V ("Injunctive Relief"):

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $ 750.00 | 1st through 30th day |
| $ 1,500.00 | 31st through 60th day |

17

$ 2,250.00                                          61st day and beyond

29.    The following stipulated penalties shall accrue per violation per day for each violation of any obligation of Section VII ("Reports"):

Penalty Per Violation Per Day                       Period of Noncompliance

$ 250.00                                            1st through 15th day

$ 500.00                                            16th day and beyond

30.    Stipulated penalties under this Section shall begin to accrue on the day after performance is due or on the day any other kind of violation of this Consent Decree occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until any other kind of violation of this Consent Decree ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

31.    Savannah Land shall pay any stipulated penalty within 30 days after service of the United States' written demand.

32.    The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.

33.    Stipulated penalties shall continue to accrue during the procedures of Section X ("Dispute Resolution"), but need not be paid until the following:

(a)    If the dispute is resolved by agreement of the Parties or by a decision of the United States that is not appealed to the Court, Savannah Land shall pay accrued penalties determined to be owing, together with interest at the rate specified in 28 U.S.C. § 1961, to the United States within 30 days after the effective date of the agreement or service of the United States' decision.

18

(b)      If the dispute is appealed to the Court and the United States prevails in whole or in part, Savannah Land shall pay all accrued penalties determined by the Court to be owing, together with interest at the rate specified in 28 U.S.C. § 1961, within 60 days after service of the Court's decision or order, except as provided in subparagraph c, below.

(c)      If any Party appeals the District Court's decision, Savannah Land shall pay all accrued penalties determined by the appellate court to be owing, together with interest at the rate specified in 28 U.S.C. § 1961, within 15 days after the appellate court's service of its mandate.

34.      Savannah Land shall pay stipulated penalties owing to the United States in accordance with instructions to be provided to Savannah Land by DOJ, and Savannah Land shall provide notice that such payment has been made in accordance with Section XIV ("Notices").

35.      To the extent Savannah Land demonstrates to the Court that delay or other non-compliance was due to a Force Majeure event as defined in Paragraph 39 below, or otherwise prevails on the disputed issue, the Court shall excuse the stipulated penalties for that delay or non-compliance.  In the event that a stipulated penalty is applicable and if Savannah Land fails to pay stipulated penalties according to the terms of this Consent Decree, Savannah Land shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Savannah Land's failure to pay any stipulated penalties.

36.      The payment of penalties and interest, if any, shall not alter in any way Savannah Land's obligation to complete the performance of the requirements of this Consent Decree.

37.      Savannah Land shall not deduct any stipulated penalties paid pursuant to this Section in calculating its federal income tax.

19

38.    <u>Non-exclusivity of remedy</u>.  Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree.  Subject to the provisions of Section XII ("Scope and Effect/Reservation of Rights"), the United States expressly reserves the right to seek any other relief it deems appropriate for Savannah Land's violation of this Consent Decree or applicable law, including but not limited to an action against Savannah Land for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt.  However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX.    FORCE MAJEURE

39.    "Force majeure," for purposes of this Consent Decree, means any event arising from causes beyond the control of Savannah Land, of any entity controlled by Savannah Land, or of Savannah Land's contractors or consultants, that delays or prevents the performance of any obligation under this Consent Decree despite Savannah Land's reasonable best efforts to fulfill the obligation (for instance, a hurricane or other natural disaster causing significant risk to life and property).  The requirement that Savannah Land exercise "reasonable best efforts to fulfill the obligation" includes using reasonable best efforts to anticipate and address the effects of any potential force majeure (a) as it is occurring and (b) following the potential force majeure, such that any delay or non-performance is, and any adverse effects of the delay are, minimized.  "Force majeure" does not include, for example, financial inability to perform any obligation under this Consent Decree; increased costs of performance; changed economic circumstances; changed labor relations; normal precipitation or wind events; changed circumstances arising out of the sale, lease, or other transfer or conveyance of title or ownership or possession of a site; or failure to obtain

federal, state, or local permits if Savannah Land has not submitted timely and complete applications or has not taken all other actions necessary to obtain all such permits.

40.    If any event occurs for which Savannah Land will or may claim a force majeure, Savannah Land shall provide notice to DOJ and USACE at the addresses in Section XIV ("Notices").  The deadline for such initial notice is within seven (7) business days after Savannah Land first knew that the event would likely delay or prevent performance.  (The United States may, in its unreviewable discretion, extend the time within which notice must be given.)

41.    If Savannah Land seeks to assert a claim of force majeure, within seven (7) business days after Savannah Land serves the notice required in the preceding Paragraph, Savannah Land shall submit a further notice to DOJ and USACE that includes:  (a) an explanation and description of the event and its effect on Savannah Land's ability to perform the obligation(s) of the Consent Decree; (b) a description and schedule of all actions taken or to be taken to prevent or minimize the delay and/or other adverse effects of the event; (c) if applicable, the proposed extension of time for Savannah Land to perform the obligations(s) of the Consent Decree; (d) Savannah Land's rationale for attributing such delay to a force majeure; (e) a statement as to whether, in the opinion of Savannah Land, such event may cause or contribute to an endangerment to public health or welfare or the environment; and (f) all available proof supporting Savannah Land's claim that the delay was attributable to a force majeure.

42.    Failure to submit a timely or complete notice or claim under the preceding two Paragraphs regarding any particular event precludes Savannah Land from asserting any claim of force majeure regarding such event, provided, however, that the United States may, in its unreviewable discretion, excuse such failure if it is able to assess to its satisfaction whether the

event is a force majeure, and whether Savannah Land has exercised its commercially reasonable efforts in accordance with the first Paragraph in this Section.

43.     The United States, after a reasonable opportunity to review Savannah Land's force majeure claim, shall notify Savannah Land of its determination whether Savannah Land is entitled to relief under this Section and, if so, the excuse of, or the extension of time for, performance of the obligations affected by the force majeure event.  If the United States does not provide a determination within thirty (30) Days after receipt of Savannah Land's written force majeure notice, Savannah Land may treat the absence of a response as a denial of the written force majeure notice. An excuse of, or extension of the time for performance of, the obligations affected by the force majeure event does not, by itself, excuse or extend the time for performance of any other obligation.

44.     If Savannah Land elects to invoke the dispute resolution procedures set forth in Section X ("Dispute Resolution"), it shall do so no later than fifteen (15) business days after the United States serves its determination regarding Savannah Land's claim of force majeure under the preceding Paragraph.  In any such proceeding, Savannah Land has the burden of proving that the delay or anticipated delay has been or will be caused by or arises from a force majeure event, that its proposed excuse or extension was or will be warranted under the circumstances, and that it complied with the requirements of this Section.  If Savannah Land carries this burden, the delay or non-performance at issue shall be deemed not to be a violation by Savannah Land of the affected obligations of this Consent Decree identified to the United States and the Court.

## X.     DISPUTE RESOLUTION

45.     The dispute resolution procedures in this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Savannah Land's failure

to seek resolution of a dispute under this Section concerning an issue of which it had notice and an opportunity to dispute under this Section prior to an action by the United States to enforce any obligation of Savannah Land arising under this Consent Decree precludes Savannah Land from raising any such issue as a defense to any such enforcement action.

46.    Informal dispute resolution. Any dispute subject to the procedures in this Section shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Savannah Land sends DOJ a written notice with a copy to USACE at the addresses set forth in Section XIV ("Notices"). Such notice shall clearly state the matter in dispute. The period of informal negotiations shall not exceed thirty (30) days from the date the dispute arises, unless that period is modified by written agreement of the Parties. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 days after the conclusion of the informal negotiation period, Savannah Land invokes judicial dispute resolution procedures as set forth below in this Section.

47.    Judicial dispute resolution. Savannah Land may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute. The motion must be filed within 30 days after the conclusion of the informal negotiation period and set forth the nature of the dispute and a proposal for its resolution.

48.    The United States shall respond to Savannah Land's motion within the time period allowed by the Court's Local Civil Rules. This response shall contain a written statement of the United States' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation; and shall set forth the relief requested by the United States and any proposed schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

49.    Savannah Land shall bear the burden of proving by a preponderance of the evidence that the United States' position is not in accordance with the terms and conditions of this Consent Decree, and that Savannah Land's position is in compliance with the terms and conditions of this Consent Decree.  The Parties also have the right to seek appellate relief from any finding of fact or law, interpretation, determination, ruling, order, or judgment of the Court in connection with any dispute between the Parties concerning this Consent Decree.

50.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Savannah Land under this Consent Decree, unless final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of alleged noncompliance with this Consent Decree, but payment shall be stayed pending resolution of the dispute as provided in Section VIII ("Stipulated Penalties").  If Savannah Land does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII ("Stipulated Penalties").

XI.    SITE ACCESS AND INFORMATION COLLECTION AND RETENTION

51.    The United States and its authorized representatives, including attorneys, contractors, consultants, and USACE personnel, shall have the right of entry into the Property owned or controlled by the Permittee or any permit transferee, as well as the Preservation Areas, at all reasonable times, upon prior notice to Savannah Land and presentation of credentials, to:

(a)    monitor the progress of injunctive relief under this Consent Decree;

(b)    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

(c)    generate documentary evidence, including photographs and similar data regarding what is observed; and

24

(d)    assess Savannah Land's compliance with this Consent Decree. Savannah Land shall be permitted to accompany USACE personnel during any such visit or inspection. The United States' right of entry into the Covered Areas of the Consent Decree expires upon termination of this Consent Decree.

52.    Until the termination of this Consent Decree, Savannah Land shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, that evidence and relate to Savannah Land's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Savannah Land shall provide copies of any non-privileged documents, records, or other information required to be maintained under this Paragraph.

53.    At the conclusion of the information-retention period provided in the preceding Paragraph, Savannah Land shall notify DOJ in writing with a copy to USACE, at the addresses set forth in Section XIV ("Notices"), at least 90 days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Savannah Land shall deliver any such non-privileged documents, records, or other information to the United States. Savannah Land may assert that certain documents, records, or other information are privileged under the attorney-client privilege, the attorney work product privilege, or any other privilege recognized by federal law. However, no final documents, records, or other information required to be created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

54.     Savannah Land may also assert that information required to be provided under this Section is protected as Confidential Commercial Information ("CCI") under 32 C.F.R. § 286.10. As to any information that Savannah Land seeks to protect as CCI, it shall follow the procedures set forth in 40 C.F.R. Part 2.

55.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States (including USACE) pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Savannah Land to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.    SCOPE AND EFFECT/RESERVATION OF RIGHTS

56.     This Consent Decree resolves and shall constitute a complete and final settlement of the civil claims asserted by the United States in the Complaint against Savannah Land or any of its direct and indirect present and former members, managers, officers, directors, employees, agents, partners, and affiliates, and the successors or assigns of each of the foregoing, including any claims arising from or relating to implementation of or compliance with the Permit.

57.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree and applicable law.

58.     The MOA shall be signed and delivered and the Modified Permit shall be issued contemporaneously with execution by the Parties of this Consent Decree.  However, this Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Savannah Land is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; Savannah Land's compliance with this Consent Decree shall be no defense to any action commenced pursuant to

any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Savannah Land's compliance with any aspect of this Consent Decree will result in compliance with any provisions of federal, State, or local laws, regulations, or permits.

59.    Nothing in this Consent Decree shall limit the ability of USACE to issue, modify, suspend, revoke, or deny any individual permit or any nationwide or regional permit, nor shall this Consent Decree limit the United States' ability to exercise its authority pursuant to section 404(c) of the CWA, 33 U.S.C. § 1344(c).

60.    This Consent Decree does not limit or affect the rights of Savannah Land or of the United States against any third party, nor does it limit the rights of such third parties against Savannah Land, except as otherwise provided by law.

61.    This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party to this Consent Decree.

62.    Neither this Consent Decree nor Savannah Land's consent to its entry constitutes an admission of fact or law by Savannah Land.  Savannah Land reserves all defenses and all rights, claims and remedies, legal and equitable, whatsoever available to it, including, without limitation, any and all defenses and rights, claims and remedies, legal and equitable in any action filed by Savannah Land against any non-party or in response to any action filed by a non-party for any matter whatsoever, including, without limitation, in any action pertaining to the Permit, PA, Modified Permit, MOA, or any federal, state, or local statute, rule or regulation.

## XIII.  COSTS

63.    The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs, including attorneys' fees, incurred

27

in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Savannah Land.

## XIV.   NOTICES

64.   Whenever notifications, submissions, or other communications are required by this Consent Decree, they shall be made in writing and sent by email as follows:

As to the United States or DOJ:  alex.hardee@usdoj.gov; devon.mccune@usdoj.gov; MailProcessing_EDS.ENRD@usdoj.gov

As to USACE:  ellen.spicer@usace.army.mil; phillip.t.paradise@usace.army.mil; sarah.e.wise@usace.army.mil; jason.d.okane@usace.army.mil

As to Savannah Land:

Dan Deichert

Email: dandeichert@gmail.com

Rafe Petersen

Email: Rafe.Petersen@hklaw.com

65.   The Parties may, by written notice, change their designated notice recipient or notice email address provided above.

## XV.   EFFECTIVE DATE

66.   The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVII.  MODIFICATION

67.   The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.  The following modifications

will be considered non-material: (1) changes to the method of submission or recipients of Notices under Section XIV; (2) extensions of time not to exceed 90 Days at a time or 180 Days cumulatively, and (3) correction of scrivener's errors.

68.    Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section X ("Dispute Resolution"), provided, however, that, instead of the burden of proof provided in Section X, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII.  TERMINATION

69.    After Savannah Land has completed all the mandatory injunctive relief obligations of Section V ("Injunctive Relief"), completed all reporting obligations of Section VII ("Reports"), and provided that Savannah Land has complied and is complying with all other requirements of this Consent Decree, Savannah Land may serve upon the United States a Request for Termination, certifying that Savannah Land has satisfied those requirements, together with supporting documentation beyond that provided in Savannah Land's final Semi-Annual Report. Savannah Land may also serve a Request for Termination prior to the completion of work authorized under the Modified Permit provided that Savannah Land has transferred the entirety of the Property subject to the Modified Permit to a Commercial Developer(s) as provided in Section 15(a) and provided further that Savannah Land has either completed (e.g. curation of artifacts in its possession or control) or transferred to a Commercial Developer(s) all obligations remaining under the Modified Permit.

70.    Within 30 Days of service of Savannah Land's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as

to whether Savannah Land has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation or other appropriate document requesting termination of the Consent Decree.

71.    If the United States does not agree that the Consent Decree may be terminated, Savannah Land may invoke the procedures of Section X ("Dispute Resolution").  However, Savannah Land may not invoke such procedures until 45 Days after service of its Request for Termination.  If the United States disputes that the criteria for termination have been met, this Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court.

72.    Irrespective of the preceding Paragraphs in this Section, termination of this Consent Decree does not extinguish the access and record retention requirements in Paragraphs 51 and 52.

## XIX.    [OMITTED]

## XX.    SIGNATORIES/SERVICE

73.    Each undersigned representative of DOJ and Savannah Land certifies that such individual is fully authorized to agree to the terms and conditions of this Consent Decree and to execute and legally bind the Party such individual represents to this document.

74.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

75.    Savannah Land agrees to accept service of process through counsel by email with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rule including, but not limited to, service of a summons.

76.   Savannah Land need not file an answer to the Complaint in this action unless the Court declines to enter this Consent Decree.

## XXI.   INTEGRATION

77.   This Consent Decree, and the Deliverables that are approved pursuant to Section XIV ("Deliverables") constitute the entire agreement among the Parties regarding the subject matter of the Consent Decree and supersedes all prior representations, agreements and understandings, whether oral or written, concerning the subject matter of the Consent Decree herein.  Only obligations expressly set forth herein are enforceable under this Consent Decree, and additional obligations shall not be added by implication, course of dealing or inference.

## XXIV.  FINAL JUDGMENT

78.   Upon approval and entry of this Consent Decree by the Court, as recorded on the Court's docket, this Consent Decree shall constitute and have the force and effect of a final judgment of the Court as to the United States and Savannah Land.

IT IS SO ORDERED.

Dated and entered this _____ day of _____, 2026.

_____

R. STAN BAKER
UNITED STATES DISTRICT JUDGE

FOR THE UNITED STATES OF AMERICA:

>Adam R.F. Gustafson
>Principal Deputy Assistant Attorney General
>United States Department of Justice
>Environment and Natural Resources Division

Dated: June 2, 2026

>/s/ Alex Hardee
>Alex Hardee
>Trial Attorney
>United States Department of Justice
>Environment and Natural Resources Division
>Environmental Defense Section
>Telephone: (202) 305-5105

>*Counsel for Plaintiff United States of America*

FOR DEFENDANT SAVANNAH LAND HOLDINGS, LLC:

Dated: June 5 , 2026

>Dan Deichert
>Savannah Land Holdings, LLC
>6220 Gaston Ave. Suite 500
>Dallas, TX 75214
>Telephone: (214) 632-2463
>dandeichert@gmail.com

>Approved as to form:

Dated: June 5 , 2026

>Rafe Petersen
>Holland & Knight, LLP
>800 17th Street, NW Suite 1100
>Washington, DC 200067
>Telephone: (202) 491-8839
>Rafe.petersen@hklaw.com

>*Counsel for Defendant Savannah Land Holdings, LLC*

32